HILL, KERTSCHER & WHARTON, LLP
    Vivek Ganti (SBN 275554)
3350 Riverwood Parkway, Suite 800
Atlanta, GA  30339
Telephone: (770) 953-0995
Fax: (770) 953-1358
E-Mail:      VG@hkw-law.com

VICK LAW GROUP, APC
    Scott Vick (SBN 171944)
800 West Sixth Street, Suite 1220
Los Angeles, California 90017
Telephone: (213) 784-6225
Facsimile: (213) 784-6227
E-mail:      Scott@vicklawgroup.com

*Attorneys for Plaintiff Computer Protection IP, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMPUTER PROTECTION IP, LLC<br><br>              Plaintiff,<br><br>              vs.<br><br>DREAMHOST, LLC.,<br>DREAMHOST, INC., and NEW DREAM NETWORK, LLC.<br><br>              Defendants. | Case No. 2:17-cv-08858<br><br>**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Computer Protection IP, LLC. ("Computer Protection" or "Plaintiff") files this Complaint against DreamHost, LLC, DreamHost, Inc., and New Dream Network, LLC (collectively, "DreamHost" or "Defendant") for infringement of U.S. Patent. No. 8,468,591 ("the '591 Patent" or the "Patent-in-Suit"), hereby alleging as follows:

## Nature of the Suit

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This is a civil action for the infringement of the '591 Patent (attached hereto as Exhibit "A") against DreamHost under the Patent Laws of the United States 35 U.S.C. § 1, *et seq.*

## The Parties

2.      Computer Protection is a Georgia limited liability company.

3.      Computer Protection owns the Patent-in-Suit.

4.      DreamHost, LLC is a Delaware limited liability web hosting and computer services company business authorized to do business in California and having its principal place of business at 707 Wilshire Blvd., Suite 5050, Los Angeles, CA 90017.  On information and belief, DreamHost, LLC and DreamHost, Inc. are the same entity.  Specifically, a website having the URL "https://www.dreamhost.com/" refers to DreamHost, Inc.  DreamHost, LLC is owned and operated by New Dream Network, LLC, a California limited liability company having a principal place of business in this District, located at 707 Wilshire Blvd., Suite 5050, Los Angeles, California 90017.  DreamHost can be served with process by service upon its registered agent CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

5.      As shown in this Complaint, DreamHost makes and uses a cloud-based operating system called the "DreamHost Cloud," which controls large pools of computer, storage, and networking resources throughout a datacenter, managed

COMPLAINT FOR PATENT INFRINGEMENT

1  through a dashboard that gives administrators control while empowering their

2  users to provision resources through a web interface.  As explained herein, at a

3  minimum, the making and use of said system by DreamHost directly infringes the

4  Patent-in-Suit.

5  <u>**Jurisdiction and Venue**</u>

6      6.    This Court has jurisdiction over the subject matter of this action

7  pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the

8  patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

9      7.    Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391

10  and 1400(b).  Among other things, DreamHost resides and transacts business in

11  this District.  Furthermore, on information and belief, DreamHost has committed

12  acts of patent infringement in this District, including the making and use of the

13  system described in paragraph 5 above.

14      8.    On information and belief, DreamHost is subject to this Court's

15  specific personal jurisdiction pursuant to due process, due at least to its substantial

16  business in this forum, including (i) at least a portion of the infringements alleged

17  herein; and (ii) regularly doing or soliciting business, engaging in other persistent

18  courses of conduct, and/or deriving substantial revenue from goods and services

19  provided to individuals in California and in this District.

20  <u>**The '591 Patent**</u>

21      9.    The '591 Patent, titled "Client Authentication and Data Management

22  System," was duly and legally issued by the United States Patent and Trademark

23  Office on June 18, 2013.  *See* Ex. A.  Ariel Silverstone is the inventor of the '591

24  Patent.

25      10.    Computer Protection is the exclusive owner of all rights, title, and

26  interest in the '591 Patent and has the right to sue and recover for any past, current

27  or future infringement of the '591 Patent.

28

1    11.    The '591 Patent is valid and enforceable.

2    **The DreamHost Cloud and DreamCompute**

3    12.    As described herein, DreamHost makes and uses the DreamHost

4  Cloud, a cloud-based system that provides centralized network control of data

5  processing resources including storage and servers hosted on networked computing

6  devices. This cloud-based operating system controls large pools of compute,

7  storage, and networking resources, all managed through a dashboard that gives

8  administrators control while empowering their users to provision resources through

9  a web interface. DreamHost Cloud is used by DreamHost to control cloud

10  computing environments providing Infrastructure as a Service (IaaS) and Platform

11  as a Service (PaaS) capabilities. These capabilities require coordination and control

12  of distributed computing resources including compute nodes and storage nodes

13  interconnected by and communicating over a high-speed computer network.

14    13.    DreamHost's first product built on the architecture and resources of

15  the aforementioned DreamHost Cloud system is DreamCompute.  DreamCompute

16  allows customers to create virtual machines, block devices, and networks on-

17  demand via standard APIs and command-line tools or via an intuitive web-based

18  user interface.  DreamHost offers the use of DreamCompute to its customers for a

19  fee.

20    14.    DreamCompute runs on a mixture of high-end Dell servers running

21  Ubuntu Linux.

22    15.    Server types being used to support DreamCompute include storage

23  nodes and hypervisor nodes for hosting and managing virtual machines (VMs).

24  These are the server types generally used to support the DreamHost Cloud system.

25    16.    The DreamCompute hypervisor nodes are optimized for hosting VMs

26  running on top of a KVM hypervisor, featuring 64 AMD cores and 192 GB of

27  RAM.

28

17. The DreamCompute VMs are started by creating an instance using the DreamCompute dashboard.

18. In DreamCompute, each instance is based on a flavor. Flavors define the amount of resources allocated to the VM in terms of vCPUs, memory, and boot volume size.

19. DreamCompute provides Flavors small enough for companies just starting out to large ones for companies with greater computing needs.

20. The storage nodes in DreamCompute are lower-powered, higher-density servers, each with twelve 3 TB disks, each running Ceph, which is an open source, massively distributed, fault tolerant storage system.

21. As is the case with DreamHost Cloud, DreamCompute features a "cockpit" pod, which represents the "brain" of the cloud.

22. In the aforementioned cockpit pod, services run on a mixture of bare metal and VMs, including Horizon, Glance, Nova, Neutron, Keystone, and Cinder, along with Apache, HAProxy load balancers, MySQL databases, and RabbitMQ queueing systems. The entire system is configured and managed by Chef, and is monitored using open source tools (*e.g.*, logstash, graphite, collectd, and nagios).

23. Every VM in DreamCompute boots from a virtual block device backed by a multi-petabyte Ceph storage cluster. Operating system images themselves are stored in the same cluster as these block devices, enabling DreamCompute to leverage Ceph's Copy-on-Write (COW) functionality. Rather than downloading the operating system image from a central store to a hypervisor (which is time consuming) and then provisioning a new block device, Ceph enables the VMs to boot nearly instantly from a thin-provisioned copy of the OS image. As a result, VMs in DreamCompute can be created and fully operational in as little as 40 seconds.

1    24.    DreamCompute was built to provide full network virtualization for
2  every customer. In DreamCompute, the physical network represents an "underlay,"
3  which is invisible to the customer. A virtual network fabric – an "overlay" – is then
4  layered on top, providing every customer in DreamCompute with a virtual OSI
5  Layer 2 (L2) switch, which is completely isolated at L2 from every other customer.

6            **COUNT I – INFRINGEMENT OF THE '591 PATENT**

7    25.    Plaintiff incorporates by reference the preceding paragraphs 1-23 as if
8  they were restated fully herein.

9    26.    Claim 39 of the '591 Patent states:

10         **[39P]** A method for centralized network control of computing devices,
11         the method comprising:

12

13         **[39A]** configuring one or more protected computing devices for
14         communication through a network; and

15         **[39B]** a hardware or software control element configured to exercise
16         control over each of the protected computing devices wherein the
17         control element is a virtual machine manager associated with a virtual
18         machine;

19         **[39C]** wherein the virtual machine manager is configured to cause the
20         one or more protected computing devices to be authenticated by an
21         authentication server,

22         **[39D]** the virtual machine manager configured to make a decision
23         whether and to what extent to allow the one or more protected
24         computing devices to launch its operating system based upon an
25         authentication status provided by the authentication server,

26         **[39E]** the virtual machine manager configured to control the one or
27         more protected computing devices to perform one of the following

28

boot operations: boot its operating system, not boot its operating system, or boot its operating system but limit its memory access, storage access, or input/output capability.

27.    Each of the limitations of claim 39 of the '591 Patent are embodied in the making and in the use of DreamHost Cloud and in the related DreamCompute product.  As such, DreamHost Cloud and DreamCompute infringe one or more claims of the '591 Patent.

28.    Regarding element **[39P]**, to the extent that it acts as a limitation of claim 39, the making and use of DreamHost Cloud and DreamCompute provide centralized network control of computing devices.  Specifically, DreamHost Cloud and DreamCompute act as a cloud-based operating system that controls large pools of compute, storage, and networking resources, all managed through a dashboard that gives administrators control while empowering their users to provision resources through a web interface.   DreamHost Cloud is used to control cloud computing environments including Infrastructure as a Service (IaaS) and Platform as a Service (PaaS) capabilities. These capabilities include but are not limited to DreamCompute, which is an example of an IaaS.  DreamCompute relies on coordination and control of distributed computing resources including compute nodes and storage nodes interconnected by and communicating over a high-speed computer network.

29.    Regarding element **[39A]**, the making and use of both DreamHost Cloud and the associated DreamCompute include the step of configuring one or more protected computing devices for communication through a network.  The compute and storage nodes on the network employed in DreamHost Cloud and DreamCompute are examples of protected computing devices. They are depicted in the following diagram taken from DreamHost's web site:

1

2

3

4

5

6

7

8

9

10



11     30.     As depicted above, the deployment of DreamHost Cloud as the

12 supporting infrastructure of DreamCompute is comprised of a collection of nodes –

13 computing devices configured as servers for various resources – interconnected by

14 a high-speed network and configured to communicate over that network.

15     31.     Upon information and belief, a control node is used to host

16 management and control services including an identity management service and a

17 dashboard service, which provides a user interface for management of the cloud

18 and its resources.

19     32.     As shown in the foregoing diagram, communication among the nodes

20 and servers described above is facilitated by a network service.  The nodes and

21 services must be configured in order to communicate via network.

22     33.     Regarding element **[39B]**, in DreamHost Cloud and in

23 DreamCompute, a hardware or software control element is configured to exercise

24 control over each of the protected computing devices wherein the control element

25 is a virtual machine manager (VMM) associated with a virtual machine.  For

26 example, a Nova compute server is installed on each compute node, and is started

27 during the boot process along with a KVM hypervisor, prior to the creation of any

28

1    VMs or booting of operating systems.  The Nova compute server acts as a VMM to

2    control the creation and management of associated virtual machines on the node.

3    The KVM hypervisor provides a virtual hardware platform for the operation of

4    virtual machines (VMs) created and managed by the Nova compute server. The

5    Nova compute server interacts with the KVM hypervisor to create and manage

6    VMs, including the authentication of VM creation requests using the Keystone

7    identity service.

8         34.    Regarding element **[39C]**, in both DreamHost Cloud and its

9    associated DreamCompute, the VMM is configured to cause the one or more

10   protected computing devices to be authenticated by an authentication server.  For

11   example, each Nova compute server acts as a VMM and communicates over the

12   network with the Keystone identity management server on the cloud controller

13   node to authenticate itself and to authenticate requests to launch VMs During

14   installation, each Nova compute server is configured with a "service account"

15   username and password. When a compute node is booted, its Nova compute server

16   communicates these credentials over the network to the Keystone identity service

17   on the controller node to be authenticated.  Upon successful authentication, an

18   authentication token is returned for use by the Nova compute server in

19   communicating with the controller and other services.  When a Nova compute

20   server receives a request to create and launch a new VM, the request is also

21   authenticated. If authentication is successful, the Nova compute server will cause

22   the hypervisor to create and launch a VM on the compute node. If authentication

23   fails, the Nova compute server will not create or launch a virtual machine.

24        35.    Regarding element **[39D]**, in both DreamHost Cloud and its

25   associated DreamCompute, the VMM is configured to make a decision whether

26   and to what extent to allow the one or more protected computing devices to launch

27   its operating system based upon an authentication status provided by the

28

authentication server.  For example, the Nova compute server, acting as a VMM, is configured to authenticate using the Keystone identity management service prior to creating or launching any VMs.  It first authenticates during boot, and authenticates again upon receiving a request to create a VM.  The compute server makes the decision whether or not to launch a VM based upon the result of this authentication, which is indicated by an authentication status returned by the identity server. Depending upon the configuration of the compute node and the parameters of the VM image specified, additional authentications may be required in order to retrieve the VM image from a storage service.  If each authentication succeeds, the Nova server will cause its KVM hypervisor to create a VM and launch its operating system. If authentication fails, the server returns an error indication to the control node.

36.   Regarding element **[39E]**, in both DreamHost Cloud and its associated DreamCompute, the Nova compute server on a compute node acts as a VMM to control the creation and launch of VMs on the node. Upon successful authentication of a request to create a VM, the Nova compute server is configured to obtain a specified VM image from a specified storage server and then use the KVM hypervisor on the compute node to create a new VM instance, load the image into the newly created instance, and launch the instance by booting the operating system contained in the VM image.  Information contained in the request to launch the VM is used to specify the memory, storage, and I/O capabilities of the VMs by specifying a "flavor" – a predefined configuration detailing the memory, storage, and networking characteristics for the VM instance.

37.   DreamHost makes and uses the DreamHost Cloud system, which infringes at least one claim of the '591 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents.

38.     Specifically, DreamHost infringes at least one claim of the '591 Patent by testing, developing, designing, validating, or otherwise making or using the DreamHost Cloud system, or similar versions thereof, for development, marketing, training, or commercial purposes.

39.     DreamHost also makes, uses, offers for sale and sells DreamCompute to its customers.  DreamCompute infringes at least one claim of the '591 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents.

40.     Specifically, DreamHost infringes at least one claim of the '591 Patent by testing, developing, designing, validating, or otherwise making, using, offering for sale, or selling DreamCompute, or similar versions thereof, for development, marketing, training, or commercial purposes.

41.     Third parties, including the DreamHost customers, have infringed, and continue to infringe, one or more claims of the '591 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by using DreamCompute in the United States.

42.     Through its actions relating to the marketing, offer for sale and sale of DreamCompute, and making and use of the DreamHost Cloud to support DreamCompute, DreamHost has encouraged and caused its customers to infringe one or more claims of the '591 Patent.  DreamHost knew or should have known that its acts would cause its customers to infringe the '591 Patent, in this District and elsewhere in the United States.

43.     DreamHost has knowledge and notice of the '591 Patent and its infringement at least as early the date of the service of this complaint.

44.     Nevertheless, DreamHost has induced infringement, and continues to induce infringement, of one or more claims of the '591 Patent under 35 U.S.C. § 271(b). DreamHost actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '591 Patent

10

by marketing, selling and supporting DreamCompute with the knowledge and intent that third parties will use DreamCompute in the United States, for its intended purpose, which infringes the '591 Patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of DreamCompute and/or the creation and dissemination of documentation and technical information related to DreamCompute.

45.     Computer Protection is currently the exclusive owner of all rights, title, and interest in the '591 Patent and has the right to sue and recover for any damages caused by past infringement of the '591 Patent, including the damages DreamHost's infringement has caused to Computer Protection.

46.     Computer Protection has been and continues to be damaged by DreamHost's infringement of the '591 Patent.  As such, Computer Protection is entitled to an award of money damages.  This includes, but is not limited to, a reasonable royalty.

47.     Upon information and belief, DreamHost will continue to infringe the '591 Patent unless enjoined by this Court.

**<u>Prayer for Relief</u>**

Wherefore, Plaintiff Computer Protection respectfully requests that this Court enter judgment as follows:

 a) adjudging that one or more the claims of the '591 Patent are valid and infringed, either literally and/or under the doctrine of equivalents;

 b) awarding Computer Protection all damages to which it is entitled under 35 U.S.C. § 284, including but not limited to a reasonable royalty, for the past infringement and any continuing or future infringement up until the date DreamHost is finally and permanently enjoined from further infringement, and ordering a full accounting of the same;

c)   declaring this to be an exceptional case, and awarding Computer
     Protection attorneys' fees pursuant to 35 U.S.C. § 285;

d)   awarding Computer Protection pre-judgment and post-judgment
     interest on its damages; and

e)   awarding Computer Protection such other and further relief in law or
     equity that the Court deems just and proper.

Dated: December 8, 2017          VICK LAW GROUP, APC

                      By:   /s/ *Scott Vick*_____
                           Scott Vick (SBN 171944)
                           Scott@vicklawgroup.com
                           800 West Sixth Street, Suite 1220
                           Los Angeles, California 90017
                           Telephone: (213) 784-6225
                           Facsimile: (213) 784-6227


                           Vivek Ganti (SBN 275554)
                           VG@hkw-law.com
                           HILL, KERTSCHER & WHARTON, LLP
                           3350 Riverwood Parkway, Suite 800
                           Atlanta, GA  30339
                           Telephone: (770) 953-0995
                           Fax: (770) 953-1358

                           *Attorneys for Plaintiff Computer Protection IP,*
                           *LLC*

**<u>Demand for Jury Trial</u>**

Computer Protection hereby demands a trial by jury on all claims and issues so triable pursuant to Fed. R. Civ. Pro. 38(b).

Dated: December 8, 2017          VICK LAW GROUP, LLC

By:      <u>/s/ *Scott Vick*</u>
Scott Vick (SBN 171944)
Scott@vicklawgroup.com
800 West Sixth Street, Suite 1220
Los Angeles, California 90017
Telephone: (213) 784-6225
Facsimile: (213) 784-6227


Vivek Ganti (SBN 275554)
VG@hkw-law.com
HILL, KERTSCHER & WHARTON, LLP
3350 Riverwood Parkway, Suite 800
Atlanta, GA  30339
Telephone: (770) 953-0995
Fax: (770) 953-1358


*Attorneys for Plaintiff Computer Protection IP, LLC*

13